## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **JASON CLARK,** | ) | |
| 2**. JENIFER CLARK**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No.  CIV-23-1147-R |
| | ) | |
| 1. **JAMES STOCKTON**, Individually | ) | |
| 2. **JAMES STOCKTON,** as Trustee, | ) | |
| of the **JAMES AND TERESA** | ) | |
| **STOCKTON FAMILY TRUST,** | ) | |
| dated June 10, 2020; | ) | Attorney Lien Claimed |
| 3. **TERESA STOCKTON**, as Trustee, | ) | |
| **THE JAMES AND TERESA** | ) | Jury Trial  Demanded |
| of the **STOCKTON FAMILY TRUST,** | ) | |
| dated June 10, 2020; | ) | |
| 4. **STEVE AMBROSE ;** | ) | |
| 5. **NICOLE AMBROSE;** | ) | |
| 6. **GATOR, LLC**, an Oklahoma | ) | |
| Limited Liability Company | ) | |
| 7. **GATOR ROUSTABOUT, LLC**., | ) | |
| An Oklahoma Limited Liability | ) | |
| Company; | ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFIED COMPLAINT</u>

The Plaintiffs, Jason Clark and Jenifer Clark, by and through CONRADY LAW,

PLLC, by James A. Conrady, and Plaintiff, Jenifer Clark, by and through THE

BALDWIN FIRM, PLLC, by Kelsey A. Baldwin, and for their causes of action against

the defendants allege and state the following:

## INTRODUCTION

**First**, this case is a Civil RICO claim, wherein Jason Clark, through the use of interstate commerce through the USPS mail and by Internet email communications, is a victim and has suffered losses and damages through extortion and attempted extortion by James Stockton and his Enterprise Organization, Stockton and Associates, Inc., which is owned and operated by James Stockton. Plaintiff seeks damages for wrongful termination and loss of wages, unpaid credit card obligation, unpaid vendor accounts, unauthorized payments to attorney and accountant, embezzlement, unauthorized payments and transfers to support losses by Gator Roustabout LLC, seizure of Plaintiffs pickup truck, all in treble damage amounts.

**Second**, this case is an ERISA claim wherein Plaintiffs and their family as participants and plan beneficiaries of an Employee Insurance Benefit Plan, sold by licensed insurance agent, James Stockton, through Stockton and Associates, Inc., all of whom are victims and damaged by the calculated and retaliatory cancellation by or at the direction of James Stockton causing the loss of their employee family benefit plan consisting of their health, vision and dental insurance.

**Third**, this is a case under Pendent State and Common law Claims. These claims include breach of contract, breach of fiduciary duty, interference with a business relationship, civil conspiracy, embezzlement, unjust enrichment, libel & defamation of character, emotional distress, indemnification, payment of past due lost wages, exemplary damages and liquidation of both Gator, LLC and Gator Roustabout, LLC.

**JURISDICTION AND VENUE**

1.    First, Federal Question Jurisdiction action arises under the laws of the United States, under 28 U.S. Code § 1331, and the Racketeer Influenced and Corrupt Organizations Act **(RICO)**, 18 U.S.C. §1961 et seq.

2.    Second,  Federal Question Jurisdiction action arises under the laws of the United States, 29 U.S.C. Chapter 18, under the Employee Retirement Income Security Act **(ERISA)**, and particularly under 29 U.S. Code § 1451 - Civil actions, thereby giving the Plaintiff statutory standing to bring this action without regard to diversity of citizenship or the amount in controversy.

3.     Third, this Honorable Court has further supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over all pendent state and common law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391 in that all Defendants reside or are organized within the State of Oklahoma and reside in this District.  All the events and actions by the Defendants giving rise to Plaintiff's claims are interrelated and arose within this District.

**PARTIES**

5.     Jason Clark (Jason) is the founder and 45% member owner in both Gator, LLC and Roustabout.  Jason is a victim of the RICO claims.

6.    Jenifer Clark (Jenifer) is married to Jason and they have three (3) children

all of whom were also plan participants and beneficiaries under the terminated employee insurance benefit plan. Jenifer performed work for both LLCs and when compensated was paid as a W-2 employee.

7.      Defendant James Stockton (Stockton), is a licensed insurance agent and owner of Stockton & Associates, Inc. Stockton through Stockton & Associates, Inc., sells employee benefit plans consisting of Medical, Vision and Dental Insurance. Stockton receives financial compensation connected with the sale of the benefit plan(s) sold to Gator an employee benefit plan consisting of Medical, Vision and Dental Insurance. Stockton receives compensation from the sale of employee group insurance policies. Stockton is the RICO culpable person who engages in the pattern and practice of racketeering activity. Stockton is the service agent of Stockton & Associates, Inc., which is the enterprise organization.

8.      Stockton, is a Trustee of the Stockton and Teresa Stockton Revocable Trust, dated June 10, 2020.

9.      The Trust is an association-in-fact related enterprise organization.

10.     Teresa Stockton (Teresa) is also a Trustee of the Stockton and Teresa Stockton Revocable Trust, dated June 10, 2020.

11.     The James Stockton and Teresa Stockton Revocable Trust dated June 10, 2020, is the entity that acquired the 10% membership ownership share in Gator and in Roustabout. The Trust is a related organization and believed to be the receptant or depository of income and profits from the enterprise organization, Stockton and Associates, Inc.

12.     Steve Ambrose (Steve) is a 45% Member of both LLCs and is the Sponsor of the insurance Benefit Plans.  Steve is the new service agent for both Gator and Roustabout.

13.     Nicole Ambrose (Nicole) is the wife of Steve and is a co-conspirator and the recipient of embezzled funds.

14.     Gator is an Oklahoma LLC (Gator) and is the owner of Roustabout.

15.     Roustabout is an Oklahoma LLC (Roustabout) and is a wholly owned subsidiary of Gator.  For income tax purposes, income and losses are treated as a pass through entity.  Only one IRS form 1120-S income tax return is filed consolidating all business activity, income, expenses and adjustments for Gator and Roustabout. **Roustabout has never been profitable and continues to drain resources from Gator.**

16.     IRS form 1120-S income tax returns for 2018, 2019, 2020 and 2021 have been prepared and filed by Ratliff CPA, Inc.  As of the filing of this litigation, no 1120-S tax return due on March 15, 2023 or by the extension deadline of September 15th has been filed for the 2022 tax year, and no forms K-1 statements of income or (loss) have been issued to the LLC members.   Further the IRS denied the Application for Extension of time.

17.     Attorney Justin Hiersche (Hiersche) is not a named defendant but is a co-conspirator connected with extortion and attempted extortion connected with the RICO claims.

## FACTUAL ALLEGATIONS

**Historical Background**

18.    Jason historically and successfully was established in business and oilfield supply.

19.     Steve and Nicole moved into the same neighborhood as Jason and Jenifer.

20.    Steve worked for Advanced Roustabout Services, LLC in Guthrie doing business with Devon Energy and others wherein there were oilfield manual dump valve performance issues.

21.    Jason designed and created a retro fit design to solve the problem, and obtained the engineering and a prototype for which there is a patent pending.

22.    The early sales of the retrofit kit design were invoiced to Devon by Steve's then employer, Advance Roustabout Services LLC.   Jason's Superior Oilfield Supply, LLC then  invoiced Advance Roustabout Services LLC for the retrofit kits sold to Devon. Advance Roustabout Services LLC then received payment from Devon and then paid the Superior Oilfield Supply invoices for the retrofit kits.

23.    From day one, all accounting for Gator and Roustabout was provided by Ratliff  CPA, Incorporated.

24.    Jason formed GATOR on May 5, 2019 and brought in Steve as a member each owning 50%. Jason and Steve made initial capital contributions of $5,000.00 each. Both Jason and Steve were supposed to receive equal compensation.  But that did not occur.  As a new LLC, Gator had no credit history.  All purchases of vehicles and

equipment was accomplished and based upon the personal credit of Jason.  Other vendor

accounts were opened in the regular course of business by Jenifer for the benefit of both

LLCs.  Unwittingly, Jenifer became personally liable for some vendor account payments

or as a guarantor.

25.     On June 24, 2020, Roustabout was formed and is wholly vertically owned by

Gator.  Jason and Steve were each 50% members.

26.     Unfortunately, Steve had a checkered credit and business history connected

with:

     a.     Ambrose Construction and Roustabout Service, LLC, Western District
        Business Chapter 11 Bankruptcy case # 15-13956, filed 10-15-2015,
        converted to Chapter 7.

     b.     Personal Bankruptcy, Chapter 7, Western District case # 17-13908,
        filed 9-2017.

     c.     Litigation  in the District Court of Logan County, Steve Ambrose vs.
        J e f f Gibbs and Advance Roustabout Services, LLC, # CJ-2020-108
        wherein Ambrose claimed to be an owner.  The case was later
        dismissed on December 12, 2022.

27.     Pickup trucks, Roustabout work trucks and equipment, all were purchased

based upon Jason's personal credit associated with his Social Security number.   The Fuel

Man account and a United credit card issued by Chase Bank were also issued on Jason's

personal credit and remain unpaid.

28.     Certain vender accounts were also obtained by and through Jason's personal

credit history.

29.     Certain proprietary information and business design(s) were created by and

through Jason and were built for the benefit of Gator and Roustabout to generate income for

the LLCs.  Additionally, a patent is pending for the protected design, created by Jason.  The original patent attorney was fired by Stockton and Steve.

30.     The management of both LLCs were pursuant to Gator Operating Agreements, effective May 26, 2019, wherein both Jason and Steve were co-managers;  An Amended Operating Agreement, dated  June 25, 2021 was created when the Stockton Trust acquired a 10% membership interest.  An Amendment to the Amended Operating Agreement, dated March 28, 2022, which was signed by Stockton that designated both Jason and Steve as co-managers, and further provided that no substantial business decisions could be made without a written resolution signed by both co-managers.  Stockton had no management authority under any operating agreement.

31.     Stockton and Associates, Inc., by Stockton, sold an insurance employee benefit plan through Blue Cross and Blue Shield to Gator.

32.     Stockton asked to contribute $200,000.00 of value for a 10% membership share in both Gator and Roustabout.  An agreement was reached between both LLCs and the James and Teresa Stockton Trust which is the 10% member.

33.     Stockton, individually, has no individual ownership interest nor management authority in either Gator or Roustabout.  The 10% membership share is owned by the TRUST.  The TRUST is the member of both Gator and Roustabout.  Stockton is not a member of either Gator or Roustabout. The RICO acts of extortion by intimidation and threats were orchestrated by Stockton, individually, in concert with Steve, Nicole and Hiersche.

**Allegations of additional Facts**

34.    For over a decade, Stockton has engaged in a pattern and practice of racketeering activity through deceptive schemes to acquire clients by selling them Employee Benefit Plans through the enterprise organization, Stockton and Associates, Inc.  Stockton then invests money into the clients business and acquires an ownership interest.  Stockton, as an owner or proxy owner, obtains confidential information from the business.  Stockton entices clients to acquire group benefit insurance through Stockton & Associates, Inc. During the course of the business relationship, he gains access to confidential information regarding clients' businesses, operations, and financials. Stockton then self appoints himself in his clients business as Chief Financial Officer (CFO), and then takes over financial control.

35.    Instead of genuinely assisting the clients, Stockton extorts by threats, fear and intimidation and uses the economic situation to his advantage.

36.    Subsequently, Stockton frequently falsely accuses the business owner of "embezzlement" from their own company and engages in a calculated campaign of extortion to take control.  He accomplishes this through extortion and threats of extortion to gain compliance by purchasing other insurance products, settlements or initiating litigation against his clients, leveraging the confidential information he obtained.

37.    Through Stockton & Associates Inc., Stockton, targets specific clients who have entrusted the firm with confidential information regarding their businesses, financials, and operations. With access to this sensitive data, Stockton obtains a strategic advantage to execute his hostile takeover plan.

38.    Once his insurance client agrees to an investment, Stockton strategically maneuvers to gain control.   Stockton self-appoints himself as Chief Financial Officer (CFO) and then manipulates financial records, misrepresents the clients' business performance, and uses threats of legal issues, and threats all aimed at creating a intended sense of urgency or crisis within the business to gain control and enrich himself and his business organizations.

39.    Stockton takes advantage of the fabricated or exaggerated problems, he then through threats, intimidation, and fear extorts and pressures his client and the owners into accepting unfavorable terms or relinquishing their majority ownership stakes or demanding the purchase of other insurance products from Stockton and Associates, Inc.

40.    Upon information and belief, ill gotten gains and profits from the acts of Stockton through Stockton & Associates, Inc.  are transferred into the James and Teresa Stockton Living Trust.

41.    Stockton engages in a pattern and practice of racketeering activity and substantially similar conduct in business relationships wherein Stockton engages in "Closed-end" predicate acts, resulting in the causation of intentional financial injuries to RICO victims.

## CIVIL RICO

42.    Under the Hobbs Act, 18 U.S.C. §1951(b), extortion means:

> **"the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."**

43.    Within the last 10 years, Stockton has conducted a pattern and practice of "Closed-End" racketeering activity.

**First Predicate Act**

44.    In early 2018 Stockton became acquainted with Keisha Jackson who at that time was employed as a hospice nurse.  In a conversation with Stockton, Keisha Jackson spoke of her need for personal health insurance.   During further conversations, Keisha Jackson expressed the possibility of starting her own hospice business, but that she lacked the financial resources to accomplish her desire.

45.    Thereafter, Stockton offered to invest $500,000 in Humanity Hospice wherein Keisha Jackson would be the 50% principal owner and Stockton would be a 50% owner.  Stockton also offered to provide Humanity Hospice a $500,000 line of credit.

46.    According to the records of the Oklahoma Secretary of State, on the 19th of October, 2018, Keisha Jackson became listed as the Registered Agent for Humanity Hospice, LLC.

47.    Stockton through his enterprise organization, Stockton and Associates, Inc., sold an employee benefit plan of health, vision and dental insurance to Humanity Hospice, LLC.

48.    The sum of $500,000 was invested by Stockton and Stockton and Associates, Inc. into Humanity Hospice, LLC.   Stockton then arranged for a $500,000 line of credit to acquire for himself an ownership interest.  Stockton then fraudulently self appointed himself as Chief Financial Officer (CFO) and took control of the bank accounts, the line

of credit and through threats to withhold advances on the line of credit, withheld payment of payroll and dictated all financial decisions for his ultimate benefit.

49.    Once Stockton gained financial control, by threats and intimidation he withheld advances on the line of credit loan unless Keisha Jackson agreed for all liability and  workers compensation insurance for the LLC to be purchased through Stockton and Associates, Inc.  Stockton also refused to allow Keisha Jackson to take her salary unless she complied with his extortion demands.

50.    Later in 2018, Keisha Jackson paid $900,000 (nine hundred thousand dollars) to Stockton to regain financial and ownership and control of her own business. Stockton then bragged to his employees and other business associates about the $400,000 profit he made from Humanity Hospice, LLC.

51.    On December 1, 2018 Humanity Hospice, LLC removed Stockton & Associates, Inc. and Stockton as the agent and provider of all insurance products.

**Second Predicate Act**

52.    GREEFF Transportation (GT LLC):  Greeff Transportation started as a family business between a father and son. GT LLC is in the transportation business specific to the oil and gas industry.

53.    GT LLC was approached by Stockton in 2019 to be an "investor" in the company. Stockton became a member of GT LLC in 2019 with the following resulting sharing ratios: Eugene Greeff 51%, Rainier Greeff 24% and Stockton 25%.

54.    Stockton then refused to provide the purchase documents and operating

agreement. A copy of the original operating agreement was the only agreement that Rainier and Eugene were provided. Stockton again self appointed himself CFO and took over all of the finances.

55. In mid-2020, Stockton then forced Eugene and Rainier under duress to sign additional applications to purchase insurance through Stockton & Associates, Inc. Stockton by threats, intimidation and fear intentionally insured that the operating and payroll accounts were at or near zero, placed the insurance application documents in front of Eugene and Rainier and stated that "you have 15 minutes to sign them or the deal is off." When asked if the Greeff's could consult an attorney regarding the documents Stockton stated "no, you have *15* minutes" and "if you do not sign, you would not be able to pay the employees or continue to do business:' During the execution of the documents Stockton stated that he had no relationship with any of the insurance entities that he was requiring Greeff to use, which was later discovered to be fraudulent and untrue.

56. A law suit was filed against Stockton for his wrongful and criminal conduct and his pattern of racketeering activity through extortion and intimidation through his enterprise organization, Stockton and Associates, Inc. [1]

57. Stockton refused to cooperate in discovery requesting all financial records of Stockton and Associates, Inc. and for an accounting of all financial transactions after Stockton self appointed himself as CFO.

58. The case was dismissed and Stockton ended up with approximately $200,000

---

[1] **EUGENE GREEFF and RAINIER GREEFF, et al. Vs. Stockton, District Court of Oklahoma County, Oklahoma; case no. CJ**-2020-2508.

of trucks and equipment in the same amount as the Trust's investment into Gator and

Roustabout for the Trust's 10% membership share.

## I.
## RICO CAUSE OF ACTION
### [18 U.S.C. § 1962 (c)]

59.    The history of conduct by Stockton in prior business relationships  elevates

this case beyond a simple business dispute to criminal racketeering conduct.

60.    In early July, 2022, Stockton entered into a civil conspiracy with Steve,

Nicole and Hiersche, to execute a hostile takeover of Gator and Roustabout, and to

"SQUEEZE OUT" and exclude Jason from his position as Co-Manager.   The

"SQUEEZE OUT" was accomplished by making false allegations against Jason and at the

same time demanding a cash call.  Defendant, Stockton,  is a RICO person pursuant to 18

U.S.C. §1961(3).

61.    The RICO Corrupt Enterprise organization is Defendant, Stockton &

Associates, Inc., and pursuant to §1961(4), which engaged in a pattern of racketeering

activity implemented and or orchestrated by Defendant, Stockton and Hiersche utilizing

interstate commerce by the use of the U.S. Postal Service and email wire fraud.

62.    No criminal charges have been brought against Stockton.

63.    Jason is a RICO person and victim also pursuant to  18 U.S.C. §1961(3)

64.    In the Spring of 2022, Jason developed a concern regarding the cash drain on

Gator income to cover operating and payroll expenses of Roustabout.   Jason expressed

his concern to Steve by stating; "we are going to have to take a hard look at Roustabout

because it continues to lose money." Jason had previously made membership loans to Roustabout totaling $130,542.38, which remain unpaid. Evidence of the concern is the 2021 1120-S income tax return showing a significant pass through loss from Roustabout.

**The March 28, 2022 meeting with Nicole**

65.    Jason attended a meeting with Nicole wherein she repeated Stockton's false allegations against Jason claiming that Jason and CPA, Steve Ratliff were stealing from the Company and that Jason and Jenifer were improperly posting expenses to Roustabout to make Steve look bad.

66.    At the same meeting Nicole said that her husband, Steve, was a liar and a horrible business man.[2]

**The June 22, 2022 Meeting:**

67.    Jason was removed as a co-manager without compliance with the amendment to the amended operating agreement which required a written resolution signed by both co-managers. Demands were made for the turn over of his Ram pickup truck titled and financed in his name. Non-compliance with the demand contained threatened litigation.

**The Justin Hiersche Demand Letters:**

68.    At the direction of Stockton and Steve, both identified as Hiersche's clients, in letters dated June 22, 2022, were mailed by using international commerce to Jason and

---

[2]    **On December 23, 2022, a transcript of the recorded meeting was prepared by RAYDON REPORTING.**

Jenifer with demands to cease all management activities and to turn over all access to

bank accounts and Quick Books accounting programs to which Steve had full access.

The two letters specifically names Stockton and Steve as Hiersche's clients.  The letters at

the direction of Stockton by through extortion by intimidation and threat, implied that non

compliance would result in litigation.

**The Capital Call:**

69.    On July 5, 2022, Hiersche in an email originated and communicated from

Stockton issued a demand for a $112,500.00 cash call that had to be paid no later than

Tuesday, July 12, 2022.  At a meeting held on Thursday, July 7, 2022, Hiersche, again

repeated the demand of Stockton that Jason make the capital call.  At the same time

Hiersche displayed a draft of a state court petition vs. Jason which he indicated at the

instruction of Stockton would be filed if Jason did not comply.

70.    Section 3.  CAPITAL in the operating agreement states:

> **3.2 Additional Contributions.** Except as otherwise
> provided in the Act, no Member is required to contribute
> additional capital to the Company. But Members may make
> additional capital contributions to the Company from time to
> time as the Member wishes.

71.    On July 13,  2022, State Court litigation was in fact filed in the District

Court of Logan County, Oklahoma, vs Jason Clark. [3]

---

[3]    **Gator, LLC and Gator Roustabout, LLC vs. Jason Clark,**
**case No.  CJ-2022-117, filed July 13, 2022.**

**II.**
**ERISA CAUSE OF ACTION**
[29 U.S. Code § 1451]

72.     Stockton as a licensed insurance agent through Stockton and Associates, Inc. sold to Gator, an employee benefit plan consisting of health, vision and dental insurance. The effective date was December 1, 2019.

73.     Jason and Jenifer and their three children were named insured and plan participants under the employee benefit plan.

74.     After the filing of the state court action, on September 1, 2022, and without any notice, Stockton cancelled the Clark family's Blue Cross and Blue Shield health insurance and the vision and dental insurance stating *"insufficient hours worked"*.  A few days later Stockton on September 23, 2022, reinstated the Blue Cross and Blue Shield health insurance and the vision and dental insurance, only to be cancelled again on September 26, 2022, stating: *"left employment."*

75.     The cancellation of the Clark family's health, vision and dental insurance left the family uninsured.

76.     Jason was able to purchase similar coverage for a monthly premium of $1,492.43.

**III.**
**PENDENT STATE COURT**
**CAUSES OF ACTION**
[Supplemental Jurisdiction 28 U.S.C. § 1367]

**Breach of Contract**:

77.     According to the relative agreements, Jason is still a 45% owner and has not

just been deprived of his income, but also loss of benefits and is essentially *"paying to*

*sue himself."*  Management per operating agreements was vested in Jason and Steve as

co-managers.

78.     Stockton never had management authority.

**Fraud:**

79.     After taking over the two LLCs Stockton without any management authority

fraudulently self appointed himself as CFO.   On November 5, 2022, Stockton and Steve

signed and submitted a credit application to LEASE CONSULTANTS, without

consultation or permission given by Jason, listed Jason's birth date and social security

number to purchase a Hotsey trailer.  Only because Jason put a hold on all three credit

bureau agencies, Jason was contacted by Bryce Keene from LEASE CONSULTANTS

for his approval for the purchase, which Jason declined.  Stockton had no management

authority in either of the LLCs.  There is no documentation naming Stockton as Chief

Financial Officer.

**Conspiracy:**

80.     In early, 2022, Stockton, Steve, Nicole and Hiersche conspired together to

**"squeeze out"** Jason of his own LLCs which deprived Jason of his employment and salary, insurance benefits, payments of Jason's Gator Chase credit cards, Fuel Man charges, certain vendor accounts and the payment of Jason's membership loans to Roustabout with an approximate balance of $130,542.38 for which Jason has personal liability for payment.

**<u>Interference with a Business Relationship</u>**:

81.    Jason hired the patent attorney seeking a patent for the retro fit dump valve designed by Jason.  Stockton fired the patent attorney and without any management or membership authorization hired another patent attorney. The current status of the patent application is unknown to Jason.

**<u>Unlawful Seizure of Pickup</u>**

82.    Defendant's seizure of Plaintiff's personally financed pickup truck, titled in his name, was unlawful because Defendants had no statutory right to bring the action in the first place based on the LLCs operating agreements.

83.    As a result of the unlawful seizure, Plaintiff has suffered damages such as loss of use of the vehicle, emotional distress, the inability to find a same or similar truck due to Global vehicle shortages from COVID-19, and the cost of a replacing the vehicle.

**<u>Embezzlement</u>**:

84.    Jason discovered that two (2) non-payroll payments were made to Nicole for unknown reasons.  The first payment from Gator, Check # 1019 was made on 07/13/2022 in the sum of $1,216.17.  A second payment from Gator, Check # 1057 was made on

09/06/2022  in the same sum of $1,216.17.

85.     Without any management authorization and without the prior knowledge of Jason, the following additional payments by Gator have been made:

        a.     To Hiersche sums totaling $57,487.40.

        b.     Ron Harris and CFO Partners in the sum of $22,500.00.

86.     The Defendant, Roustabout, continues to be a losing business operation and continues to drain resources from Gator.  Since the filing of the Logan county case, more than $250,000.00 has been siphoned from Gator to support Roustabout.

87.     On 07/21/2023 Gator paid $6,275.00 to Insightful Tax & Advisory Services, PC.

88.     Unauthorized Reimbursement payments were made for per diem to Steve in the amount of $1,800.00, plus an unauthorized reimbursement payment of $600.00.

89.     Unauthorized payment was made to Stockton in the amount of $2,742.98.

**Unjust Enrichment**:

90.     In the beginning of Gator, Jason and Steve received equal compensation. During the COVID Pandemic, Jason and Jenifer worked without compensation and according to payroll records resulted in lost wages for Jason in the sum of $91,539.84. Jenifer has lost wages in the sum of $30,769.28. According to payroll records as of June, 30, 2022, Steve received $138,577.09 more compensation than was paid to Jason.  Since the filing of state court litigation, Jason has no existing recourse to recoup his fair share of compensation.

**Libel and Defamation of Character**:

91.    On September 22, 2022, Hiersche drafted a letter with a court minute addressed to vendors and customers accusing Jason of alleged wrong doing, which was libelous and caused damage to Jason's reputation, relationships with business associates, friends, family, and financial institutions.  The letters to vendors and customers were sent by email by Steve and Stockton.

92.    The false and damaging statements about Jason "embezzling" money from the LLCs and conspiracy was spread through Jason's business contacts and personal relationships. The majority of these interstate business customer and relationships were acquired by Jason for Gator's benefit.

93.    The statements made about t Jason are false, unfounded and unproven. The harm caused by defamation of character has resulted in income loss and the loss of certain business relationships.

94.    Since June of 2022 there has been no finding of any financial wrong doing by Jason or Steve Ratliff.  Ron Harris, was hired by Stockton to investigate financial wrongful accusations against Jason.  Ron Harris in a related conversation with Steve Ratliff, CPA, stated that he found nothing wrong with any of Jason's financial transactions during the time he served as co-manager of Gator or Roustabout.

**Intentional Infliction of Emotional Distress**:

95.    Defendants James, Steve, and Nicole acted with extreme and outrageous conduct that caused the Plaintiffs to suffer severe emotional distress.

96.     Defendants, Steve, and Nicole, have engaged in a pattern of harassment towards Plaintiffs that was calculated to cause emotional distress, including but not limited to verbal abuse, threats of bodily harm, and unwarranted retaliatory actions of cutting off Plaintiff's health insurance, terminating Plaintiff without notice and terminating his pay, and threatening Plaintiff's family.

97.     Specifically, Defendant Nicole engaged in a pattern of harassment towards Plaintiff Jenifer with a blatant disregard for Plaintiff's emotional well-being by harassing and threatening her.

98.     Defendant's conduct was intentional, malicious, and retaliatory in nature causing Plaintiff's extreme anxiety, depression, fear, and panic, which goes beyond the acceptable standards of society.

**Stalking/Harassment**:

99.     Defendants, Steve and Nicole, have engaged in a knowing and willful course of conduct against the Plaintiffs that have caused them to feel alarmed, annoyed, and harassed.

100.     Nicole expressed to Jason a threat of physical bodily harm toward Jenifer, stating *"if your wife says anything about me or my daughter I'll beat her like the dog she is and drag her around."*

101.     Nicole and Steve have continually harassed Jason and Jenifer stating *"your wife said she is going to divorce you"* and would escalate the situation further by isolating Jenifer when Jason would be out of town on behalf of Gator and pushing a narrative that Jason was embezzling money from his own company.

**Breach of Fiduciary Duty:**

102.    Stockton and Steve breached their fiduciary duty by failing to have the 2022

IRS form 1120S and OTC income tax returns prepared by the September 15, 2023

extension deadline.  No K-1 has been received by Jason.

**Indemnification**:

103.    In Section 7.6 of the operating agreement it is stated:

**Indemnification of the Manager**:

**A.**    Unless otherwise provided in Section 7.6(d), the Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of Company Property) shall indemnify, save harmless, and pay all judgments and claims against any Manager relating to any liability or damage incurred by reason of any act performed or omitted to be performed by any Manager in connection with the Business, including reasonable attorneys' fees incurred by the Manager in connection with the defense of any action based on any such act or omission, which attorneys' fees may be paid as incurred.

**B.**    Unless otherwise provided in Section 7.6(d), in the event of any action by a Member against any Manager, including a Company derivative suit, the Company shall indemnify, save harmless, and pay all expenses of such Manager, including reasonable attorneys' fees incurred in the defense of such action.

104.    Stockton arranged for a One Million (1,000,000.00) line of credit with Bank

7, Oklahoma City Branch.  The loan documents are dated 11-26-2021 and include:

    a.    The Limited Liability Company Resolution to Borrow / Grant Collateral Executed by: Jason Lyle Clark, Steve Paul Ambrose, James C. Stockton, Trustee and Teresa A.  Stockton, Trustee.

    b.    Guaranty Agreements signed by: Jason Lyle Clark, Steve Paul Ambrose and James C. Stockton.

    c.    Home Mortgages as Additional Collateral were granted by Steve Paul Ambrose, James and Teresa Stockton.

105.    The maturity date of the loan was 01-10-2023.

106.    Initially, Jason is not aware of what transpired upon the January 10, 2023 note maturity date.  Jason never agreed to or executed any extension agreement at the January 10, 2023 maturity date and should be indemnified for any losses associated with the Bank 7 loan.

107.    After further investigation, it has been learned that the January due date was extended by Steve as Co-Manager to April 10, 2023.

108.    The April 10, 2023 due date was extended by Steve as manager to July 10, 2023.

109.    On July 27, 2023, a new loan agreement and note in the amount of $720,000.00 was executed by Steve as manager and by Stockton as member, **which he is not.**  Jason was never consulted nor did he consent.

110.    No new operating agreements have been executed because they require the agreement of all members, which has not happened.

111.    On July 13, 2022, state court litigation was initiated in the names of Gator LLC and Gator Roustabout LLC vs.  Jason Clark. [4]

**Exemplary Damages:**

112.    The acts of the co-conspirators were intentional and reckless, and without regard for the well being of the Plaintiffs.   The conduct was extreme and outrageous, and

---

[4]    **Gator, LLC and Gator Roustabout, LLC v.  Jason Clark, District Court of Logan County Oklahoma, Case No.  CJ-2022-117.**

was the cause of emotional distress and the causes of financial mis-management and financial losses, all to the detriment to Jason.

**Dissolution and Liquidation of both
Gator, LLC and Gator Roustabout, LLC:**

113.    Under Title 18 of the Oklahoma Statutes, there are no remedies for minority shareholder or LLC member disputes in small closely held Corporations or LLCs, leaving Jason without a statutory remedy at law.  Under Oklahoma law in such circumstances in the instant case, the only remedy is the liquidation and dissolution of the Corporation or LLC.

114.    The membership dispute is so severe and fractured that it is not practical or possible to carry on the business with all members participating. The Only remedy under Oklahoma Title 18 is dissolution.  The Court in equity may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or LLC operating agreement(s) under State Law.

## CONCLUSION

115.    Stockton never possessed any management authority for either Gator or Roustabout under the applicable operating agreements.  Stockton, individually and, Stockton as Trustee and Teresa Stockton, as Trustee are responsible and liable for all RICO related RICO crimes and offenses alleged in this Complaint for which treble

damages are assessable, and are also responsible for the ERISA damages and all of the State Court pendent claims for damages.

**PRAYER FOR  RELIEF**

**RICO Treble Damages:**

116.    Judgment jointly and severally against Stockton, individually, and James Stockton, Trustee and Teresa Stockton, Trustee of the TRUST, for all RICO and ERISA, . damages in a treble amount estimated to be a total of **$2,634,118.65,** ultimately to be determined by a jury: plus Judgment for all costs and Attorney's fee for this action estimated to be **$125,000.00.**   (See Exhibit "One".)

**State Court Damages:**

117.    Judgment for all State and Common Law Damages (See Exhibit "One".) subject to a determination by a jury, estimated to be **$3,290,866.69**, inclusive of:

        a.      A personal Judgment sought against Steve for **$138,577.09** in damages for disparity in income, and

        b.      Punitive Damages in an estimated amount of **$1,500,00.00**, to finally be determined by a jury, and

        c.      Judgement for unpaid balances due for the Chase Credit Card and Fuel Man.

118.    Indemnification for all final liabilities to all vendors, Bronco Equipment, and Bank 7 for amounts owed by either Gator or Roustabout.

**Equitable Relief:**.

119.    Dissolution of both Gator LLC and Gator Roustabout LLC.

120.    The asserted total of all damages are in the estimated sum of **$6,050,005.34**,

the final amount ultimately to be determined by a jury.

121.    Such other relief as the Court may deem just and proper.

Dated this 8th day of December, 2023.

Respectfully submitted,

/s/ James A.  Conrady

James A. Conrady, OBA #1853
**CONRADY LAW, PLLC**
2203 South Western Road
Stillwater, OK 74074
Telephone (832) 330-5620
jconrady@hotmail.com
***Counsel for Plaintiffs***

and

/s/ Kelsey A.  Baldwin
_____
Kelsey A. Baldwin, OBA # 34500
**BALDWIN FIRM P.L.L.C.**
2917 NW 156th Street
Edmond, OK 73013
Telephone (405) 226-7856
Facsimile (405) 843-6831
Kelsey@TheBaldwinFirm.com
***C0-Counsel for Plaintiffs***

## **VERIFICATION**

STATE OF OKLAHOMA,          )
                            )     ss:
COUNTY OF OKLAHOMA,         )

Jason Clark, of lawful age and being first duly sworn upon oath, states: I am one of

the Plaintiffs above named.  I have read the **COMPLAINT** and state that all statements

contained therein are true and correct according to my best information and belief.

_____
                              Jason Clark

Subscribed and sworn to before me on the 8ᵗʰ day of December, 2023, by Jason

Clark, Plaintiff above named.

_____
                              Notary Public